THOMAS S. CLARK use of DAVID BRENDLINGER *v.* STEPHEN WALKER.

*Pleading—Evidence—Contract—Promise to Pay—Demand.*

Whenever one man has money in his hands which belongs to another, the latter may recover the same in an action of assumpsit for money had and received; in such case the law implies a promise to pay and there need be no demand of payment before suit brought.

An action of assumpsit will not lie on a sealed instrument.

Where by a stipulation in an instrument under seal a party thereto becomes the holder of money belonging to another not a party thereto, the latter may recover the same in an action of assumpsit for money had and received, and use the sealed instrument as evidence in the proof of his case.

In a sale of standing timber to be cut and removed by the purchaser during a period of two years, and to be paid for as cut, an action will lie at any time for recovery of the amount on timber then cut and removed.

(*Kent, October 30, 1891.*)

ACTION OF ASSUMPSIT for the price of certain timber.

*J. Alexander Fulton,* for plaintiff.

*Edward Ridgely* and *James Pennewill,* for defendant.

COMEGYS, C. J., charging the jury.

*Gentlemen of the Jury*: This is a case that has occupied considerable time, and it is a very interesting one, in view of the questions of law that are involved within it. The questions of fact there are nothing very peculiar about; but I think you will not have any very great difficulty in coming to a conclusion upon this case, when we have said to you what we conceive to be the law applicable to it. But the very question of law which has been raised and which has been so much discussed at the bar by counsel in this case is one that has never received that elaborate treatment in any case in this State, so far as we know, as it has in the present one; and we have given it a great deal of consideration and have reached a conclusion in regard to what the law is that we feel con-

fident is a correct one; but if it should be thought incorrect by the counsel on either side—having declined to give this judgment of non-suit—either of them can take it to the Court of Errors and Appeals.  We shall make no objection on our part if that should be done.

On the 28th of July, 1886, David Brendlinger, who was the owner of the tract of land with the timber or woodleaf then upon it with which this suit is concerned, sold and conveyed said tract to Pennel Rash, and took from him as security for $3,250 of the purchase money, his judgment bond also the mortgage of himself and wife of the said premises.  On the following seventh day of August Rash sold the woodleaf of said premises (which covered about fifty acres of the entire tract)to the defendant in this suit, Stephen Walker.  The articles of sale and purchase between them, which are in proof before the jury, being in these words :

" Received from Stephen Walker fifty dollars on account of wood and timber privilege on McCaulley farm near Dina's Cross Roads, Kent County, Delaware, sold him this day for thirteen hundred dollars, this being a part of purchase money, the balance to be paid as the timber is cut.  The time of cutting and hauling said wood and timber to expire August 7, 1888.  But from this date, August 7, 1886, until August 7, 1888, the said Walker agrees to cut the best timber and have it off as soon as he can.  In case said Walker is stopped from cutting the wood or timber then he is to pay only for what he got—this means if he is stopped by any person holding a claim against said land.  The farm is now owned by Pennel Rash and tenanted by David Farrow.  The money to be paid to Thomas S. Clark."  This is sealed by Pennel Rash and Stephen Walker.

In pursuance of this agreement the defendant, Walker, entered upon the land to avail himself of the benefits of his purchase, and cut and carried away therefrom, to his saw mill close at hand to be worked up into lumber, such timber trees as he had occasion to use for that purpose, and he so continued to do from time to time until

the suit we are trying was brought, 12th October, 1887, and in fact until the month of January, 1888,—but we are not particularly concerned with any cutting after said 12th of October, 1887 ; if he cut any timber after that time, it forms no part of the claim in the present action, which seems to have been brought to recover for such timber, etc., as was cut up to that time. Now it has been testified to before you (and the fact is not disputed) that in addition to the small sum of $50, receipted for by the agreement, the defendant, Walker, also paid to Thomas S. Clark (named in the agreement as the person to receive the same) the sum of $650 by and through two negotiable notes given to him by said Walker, one at 90 days, dated October 9, 1886, for the sum of $300, and the other at 95 days, for the sum of $350, dated December 23, 1886, and both payable and discounted at the First National Bank of Dover, where they, or those in renewal of one or both of them, were afterwards paid. This action has no reference to them. Leaving out of view for the present the point of law raised by the defendant's counsel and discussed yesterday upon their motion for a non suit at the close of the plaintiff's testimony (about which I shall have something to say to you before I have done) the question to be decided by you would seem to be this : Had the defendant, Walker, on the 12th day of October, 1887, (the date of bringing the suit) realized from his contract more than the sum of $700. If he had, then he is liable for the excess, whatever that may be found to be by you upon the testimony before you ; otherwise, he is not liable in any amount. Having paid $700, he was not at the date of the suit liable for anything more, unless he had realized more at that time on his contract. Now whether he had or not is a question exclusively for you, to be decided upon the evidence before you. I need hardly say to you, gentlemen, that the testimony on this point is very conflicting. In the first place, it is very much so in regard to the quantity of the timber on the land and its quality also. It is not my purpose, nor is it necessary that I shall go through this testimony and point out the discrepancy between that of the re-

spective sides against each other : for it is all fresh in your memory, and, for the most part, sufficiently definite to need no discussion at my hands.   I will only say to you that where there is a conflict of testimony or disagreement between the witnesses produced by the respective parties in a suit, the jury should first endeavor to reconcile the testimony of each class of witnesses who speak to a fact or facts of importance, so that the whole may be harmonious and not conflicting, if such may be done.   If it cannot be done, then it is the duty of the jury to estimate and weigh in their minds the value of the testimony on the respective sides and give their verdict to that side where the testimony is, all things considered, of the greatest weight or preponderancy.   In estimating such weight the jury are to consider the character and standing of the witnesses respectively as known to them, their means of knowledge of the facts about which they speak, including their opportunity of acquiring information, the sobriety and accuracy of their judgment and all other circumstances or facts with respect to such witnesses as do, or do not, show the reliability of their statements, respectively.   It is particularly true in civil actions, like the present, involving estimates of quantities or qualities that the means and opportunities of witnesses of forming judgments and their opinions when given, should be carefully considered by a jury.   In performing this duty of determining the value of testimony, you are to look also at the relation of particular witnesses to the case, if there be such as is not common,—that is to say, if a witness is a party in an action, or is interested in it : though he is now a competent witness by our present law, yet the reason of his exclusion heretofore still exists—the bias which by all human experience affects the best of men and prompts them to present their own side in a light oftentimes more favorable than the real facts will justify.

I will now speak to you in relation to the law as applicable to this case, so that you may have it for your guidance in considering your duty.   As you have heard often in this trial, this is an action of assumpsit to recover from the defendant money claimed to be in

his hands belonging to the plaintiff. What is called the declaration, or narr, in this case has several counts or allegations of claim by the plaintiff, Clark, against the defendant, Walker,—some of a special and others of a general nature: but I think it proper to say to you that his only legal claim to recover, if he have any, is (as was truly said by the senior counsel for the defendant) upon what is known as the common count of money had and received. Now the law is that whenever one man has money in his hands which belongs to another—that is, which that other is entitled to have in his own hands—he may bring the action of assumpsit for money had and received and recover it. In such a case the law does not require that there shall be any contract or intercourse, whatever, between the parties resulting in any agreement by the holder of the money to pay it over to the claimant of it. The fact that the former has the money raises in law a promise, by implication, that he will pay it to the latter, who need make no demand for it before bringing his action, which itself is a demand. The point in all such cases to determine is this, has the defendant in the suit money in his hands to which the plaintiff is entitled? if he has, then the plaintiff is entitled to a verdict for it in a suit before a jury. Now in this case two points are raised by the defendant's counsel which we are asked to charge you upon. The first is, that the instrument of writing between Rash and Walker being under seal, the plaintiff cannot recover in this suit upon it, the rules of law being against it. That means this, that an action, such as the action in this case is, an action of assumpsit, cannot be brought upon an instrument under seal as the contract here is. That is perfectly true; no such action will lie, but one of two others must be used. But this action is not brought, as we think and charge you, upon the contract as the cause of action, but upon the fact that, as the plaintiff alleges and which he claims to have shown you, the defendant at the time of the suit brought (looking at the amount of timber he thinks he has shown the defendant must have taken from the land and appropriated to his own use) had a much larger

amount of money in hand than he had paid out,—that is more than the sum of $700, the defendant claims to have paid to the plaintiff. How much more, he has not shown to you, but he contends you may reach it by inference from the facts he says he has proved. We say to you, that if, from the proof before you, you are satisfied the plaintiff has shown that the defendant had, at the time of the suit brought, October 12, 1887, any sum derived from the appropriation to his own use of timber on the land of Pennel Rash, then there is no obstacle to his recovery of it on the ground of having mistaken his remedy and brought the wrong action to recover it. By the terms of the contract between Rash and Walker the plaintiff here was made the recipient of the money accruing under the contract; he, therefore, was entitled to receive and have it in his own possession. This was the agreement between the parties to the contract, and they were bound by it between themselves, until it should be rescinded, which was not done He (Clark) was entitled to avail himself of it, which he did, with their full concurrence, so far as appears, by receiving the money which the defendant paid under it and was made the payee of the notes which the defendant gave, to enable him to procure their discount and acquire other money, payable under the contract. Here is not only the agreement of the defendant that the money of the contract shall be paid to Clark, but actual payment of more than half of it to him, thus recognizing and establishing his right to it in virtue of the agreement between him (the defendant) and Rash. These facts show, as we hold, such a relation of Clark to this money as raised an implied promise in law, as between him and the defendant Walker, that the latter would pay it over to him as it became payable under the contract. And that is all that exists in any case where one party has money in his hands that belongs to another. Further, the plaintiff in this case, though named in the contract is no party to it, it being the deed alone of Rash and the defendant. The foundation of the plaintiff's suit is not the contract, upon which as such he cannot sue, but the possession

by the defendant, Walker, of money which he had a right to have. That right is shown by the contract and extraneous facts, the contract being used to point out how the liability of the defendant to him the plaintiff, no party to it, arose. If he were a party, he could not sue in assumpsit, but must adopt covenant or debt; but not being a party to it, no obstacle exists to his use of it as part of his evidence to show how it is that he has any right to sue the defendant. Where, as in this case, such right results from a stipulation in a contract which places a party to it in the position of a holder of money another is entitled to, the latter recovers not on the contract but on such relation, or rather the implied promise resulting from, or growing out of it. In support of our view on this point, we refer to the cases of *Pettyjohn v. Hudson,* in Vol. 4 of Harrington's Reports, 468 ; and *Taylor v. Jackson,* 5 Houston, 324, in our own reports ; and to the cases of *Bruce v. Parsons,* 12 Cushing, 591 ; *Hitchcock et al. v. Lukens & Son,* 8 Porter, 333 ; *Cram v. Bangor House Proprietary,* 12 Maine, 354 ; and the other cases cited by the plaintiff's counsel, which sustain his contention as to his right to sue in assumpsit in this case.

' The other point made by the defendant, is that at the time the plaintiff brought his suit, 12th October, 1887, he had no right of action against the defendant. This is supported by his contention that the contract between Rash and the defendant was what is called executory,—that is, was still open and operative—that it was entire and continuous and not expirable by its terms until the end of two years from its date, August 7th, 1886. If that were all, then the the suit would be premature, not being capable of being brought till the end of the period, and we should instruct you not to give the plaintiff a verdict, but, by the terms of this contract, it is provided that the balance of the purchase money is to be paid as the timber was cut, which we instruct you entitled the plaintiff to a right of action for .any timber removed from the premises of Rash during the above period of two years ; in other words, that the contract means what it says, that

the timber shall be paid for when it is cut,—that is at the time of removal. Rash had no security otherwise and the provision was most reasonable. This interpretation is borne out by the action of the defendant under it in paying the amount of $700 towards it at the times mentioned.

We have been requested by the plaintiff's counsel to charge you that the clause in the contract which provides for the contingency of the defendant being stopped in his operations before the expiring of the time the contract was to last, means that the defendant should pay for the timber he had then got at its actual value without reference to the contract price of the whole of it. Unfortunately, the parties established no rule for such contingent valuation, and none seems to be strictly deducible from the language of the instrument itself requiring of the court to give an interpretation of the clause in question. We shall therefore submit the matter to you to determine what would be a proper course to take in estimating such value, promising, however, that the true rule would seem to be, to make the best estimate you can of the value of the timber taken off before the suit was brought, and what was then left upon the premises; and then, if you find that the part left would not make up the difference (that is six hundred dollars) between the $700 paid and the contract price of $1,300, to give the plaintiff a verdict for what it lacks of so doing; if you find otherwise, to give the defendant your verdict. The view that this would be a reasonable way of arriving at the matter, has support in the fact that if the method contended for by the plaintiff should be approved and you should adopt the estimate made by some of plaintiff's witnesses of quantity taken from the ground by the defendant up to the time the suit was brought, the defendant might lose entirely the benefit of his bargain.

We now deliver the case into your hands to deal with as you best may, taking advantage of all of the circumstances and the law in the case.

Verdict for the plaintiff.